Once again, for those of you who weren't here earlier, Justice Litton was unable to join us here today. He will be participating in deciding this case, and we'll listen to the oral arguments on tape, and we'll conference with us later. With that being said, we'll call the next case. Case number 313-0823, consolidated with 313-0848, 313-0926, and 313-0927. People of the State of Illinois, appellate by Judith Kelly v. Stephen Pirro and Matthew Flynn, appellees by Lewis Bertrand, James Saxon, appellee by Dimitri Galkas, and Stephen Harris, appellee by Douglas D'Olivero. Ms. Kelly? You're being triple teamed today. Yes, I am. Thank you. May it please the court. This is a state appeal brought on a very narrow issue. The state has limited right to appeal. The state can appeal from the grant of motion to quash and suppress, and that's what happened here. The state consolidated the four cases for briefing and argument because they all, they proceeded by stipulated testimony to have the court answer one question. In this case, the single question was, was Jeffrey Gaither authorized to act as a peace officer on the day of the respective stops in late 2012 and early 2013? And the people submit that the statute had been complied with and that he was authorized to act as a peace officer. Let me ask you along that line, we also have the power to affirm for any reason as a parent record, right? That's right. It's developed in the record, yes. And in this case, as I said in our reply brief, that issue was not before the court, the record was not developed to answer any broader question of the authority and the interpretation of the statute. Why not? Why wasn't it developed? The statute is what it is. The statute is what it is, that's correct. And the state is doing what it's doing. Then that's right, but the parties didn't argue it in this case. Three of the parties didn't mention it at all. One of the parties, I think I put it in my reply brief, briefly mentioned it with no argument, just to say I think the statute's bad. And the judge said, well, I've interpreted it, and apparently he had done so in prior cases. I've interpreted the third portion of what the duties are available to these safe officers to be very broad. And I've interpreted that the statute allows the state's attorney to have investigators, special investigators, perform these traffic stops. And that was the extent, and I believe the judge even said, I don't know, cases, no legislative history that says otherwise, and therefore, and that was the end of that. Then they proceeded to the hearing on the fingerprint issue, which is what the people state is before the court today. So it's the people's position that the state of the record is not fully developed enough to answer the question. As I stated in my reply brief, in fact, there is case law that the prosecutor's duties are very broad and, in fact, can be broad enough to include investigating and even bringing the officer to investigate a case when other avenues are not pursuing it. We don't know what the case was here. And that, I mean, in simplest forms, that question could be whether the statute authorizes the state's attorney to have his own police department. It could be. That was not raised here, not argued here, not developed in this record. It was argued in the Appellee's brief, wasn't it? Yes, it was. And the people stated that it was improperly argued in the Appellee's brief and that the court doesn't have sufficient record to respond to that argument. And I believe we distinguish the cases he relied on, the Johnson case, the general cases that say that a ruling can be affirmed on the basis apparent of the record. And in the cases where they've done so, particularly the Johnson case, there was significant development of the record on those other points. And that's not the case here. Would there be any factual questions that could be raised in the trial court as opposed to legal issues? There could be. There could be. So whether or not what was going on here was authorized by the state police. Yes, I think there could be. And I believe I said so in the reply brief. To get to the issue that is before the court today, the question was, the trial judge found that the requirement in the statute, that before being sworn in as a peace officer, that the persons, the applicants' fingerprints must be sent to the Department of State Police and the Department of State Police must check their records and notify the state's attorney's office if there were any felony convictions or convictions of moral turpitude on that person's record. The trial judge found that that portion of the statute required strict compliance and that there had not been strict compliance in the incident case. And the people have argued that there was strict compliance or, alternatively, that substantial compliance was sufficient. In this case, the officer in question had been a state police officer from 1987 through 2011, had been fingerprinted when he started with the state police. There was evidence that his fingerprints had been on file with the state police since 1990, and he had been retired in July of 2011 at the rank of master sergeant and then was sworn in as this officer six months later in January of 2012. I believe that's the year, yes. The state's attorney, of course, had personal knowledge of the officer and did not resubmit the fingerprints because he knew that the fingerprints were already on file and nor did he, in fact, request that the state police do a search of their records. However, the stipulated testimony shows that in January, two days prior to being sworn in, the Illinois Law Enforcement Training Standards Board person who's in charge of background checks had, in fact, done a background check of Jeffrey Gaither and found that there were no felony convictions and no convictions of moral turpitude. Because the fingerprints were, in fact, on file, because there were, in fact, no convictions and, in fact, a background check had been done, the people submit, as they did in their brief, that there was strict or at the very least substantial compliance with the statute. I know the FLE argues that we don't know what kind of a background check is done, and I don't know if you can answer this, but I had a question about once your fingerprints are in the system, when a background check is done and, you know, all these identifiers, is that included, I mean, running those, is that included every time that you have a background check or is there, you know, or can you pull certain information? It seems to me that it would all be cumulative. Whatever you put in would stay in the bank of information, but the FLE seems to question or seems to say maybe that is not the case. Do you happen to know? I don't know. I think that it probably is the case for one thing, the woman from the Illinois Law Enforcement Training Standards Board reviewed the state police records, which would be the same records the state police would be reviewing. She reviewed those same records. Additionally, the statutes give many law enforcement agencies the ability to conduct background checks. The Law Enforcement Training Standards Board, the Department of State Police, individual police departments when they're seeking to hire a police officer, individual fire departments. There's never any distinction in the statutes, and I pointed to a few of those statutes allowing or tasking these other law enforcement officers with the ability to do background checks to determine whether there are any felony convictions or convictions of moral turpitude, and there's never been a distinction made in the statute as to how these background checks are done. So in answer to your question, I would think that they were all the same, especially since she testified that she, in fact, used the state police records, and that would be what the statute in this case directed, that the state police do a background check. So I think it would be the same. If there are no further questions, I'll... Well, in any good chance, I suspect we're going to hear a little bit about this in a minute, but if you can't think about it now, think about it. I mean, we know what was going on as far as you got Mark's live firearms. The state's attorney investigator... I'm not actually sure it was Mark. It did have lights, but I'm not actually sure it was Mark. And it said, and the state's attorney investigator even at one point said, I'm going to give you a warning ticket. So you got a state's attorney investigator out there writing warning tickets on the interstate, and then we got the statute. So maybe on a rebuttal you might think about what factual questions could need to be developed as to whether or not this type of conduct is authorized by the statute under which these officers were sworn in. Okay. I would, in brief response, state that the statute provides that they would have all the powers... Special investigators shall be peace officers and have all the powers possessed by investigators under the state's transparent prosecutor act. And under that act, peace officers shall have all the powers possessed by policemen in cities and by sheriffs. So they would have broad police powers. But if you look at the spirit and the purpose of the act and why... You know what my background is, and most of the state's attorney investigators are retired police officers, and they go in and they can carry guns, and sometimes they've got to go talk to people in areas and maybe even drag them to court and kick them and scream so they can talk to them or get them to testify. And so they need those police powers to make an arrest in that case. But do you think that the statute of homicides is out there right at the screening table? I don't know whether that came up in the legislative history because it wasn't brought up below. I think the statute can be read broadly and has been read broadly. And I think that's the proper interpretation. And I think because they specifically referred to another section which gives them full police powers, then yes, I think that can envision. Do you know of any county in the state other than Los Alamos? Personally, I do not. That doesn't mean it doesn't exist. I'm not aware of any county that's doing it. Just because I didn't see it doesn't mean I didn't have an idea. Fair. All right. Thank you. All right, thank you. Mr. Alvaro. Thank you, Your Honor. The trial judge was correct in granting my client's motion to suppress because Jeffrey Gaither was not properly appointed as a special investigator on the day he stopped and arrested my client. Your Honor, I believe that a brief statement of facts is important for us to understand in this case. In the fall of 2011, it's been mentioned that Mr. Towne created the SAFE team, and Officer Gaither was sworn in on January 21, 2012. On that date, Mr. Towne authorized Gaither to act as a police officer. Gaither and Towne did not follow the mandates of the relevant statute by having Gaither's fingerprints taken and transmitted to the state police at any time between his appointment and the arrest of Mr. Harris on November 20, 2012. The statute we're talking about, 55 ILCS 5-3-9005, is clear regarding the requirements to be appointed a special investigator. The statute first mandates an appointee complete police training or submit a waiver based upon prior police training or experience. Second, the statute clearly and unambiguously requires that, quote, before a person is appointed a special investigator, his fingerprints shall be taken and transmitted to the Department of State Police, end quote. I have a question about that. Yes, ma'am. That is the plain language of the statute. It doesn't say that they have to be taken by the state's attorney or his office or after he's selected but before appointment. I mean, it says before a person is appointed. 1987 would be before his fingerprints had been taken and they had been submitted to the Department of State Police. To answer that question, I think you have to take a look at the totality of circumstances. By looking at the first requirement, it says that he has to have police training or experience or apply for a waiver. The legislature's clear language is that they wanted that to be the case. They could have put a waiver, an exception clause, that if an individual has his fingerprints previously on file, then that would be waived. And that's not the requirements here. It's a three-step process. One is you have to have law enforcement experience or have an exception or waiver. Second, you must be fingerprinted. You know, with technology these days and everything else, you never know whether or not the fingerprints they take now would be better than the fingerprints they had before. Also, when you get to the third point after that is that they take, after you get the fingerprints sent to the Department of State Police, the statute then directs that they examine the records and submit to the state's attorney any conviction information concerning the applicant. So I think the legislature's intent was to make sure they had everything current to make sure that the individuals that were going to be selected as special investigators had no prior convictions or crime of moral turpitude. I think it's, as I mentioned, the record is clear that no time before his appointment that his fingerprints were taken or transmitted. That's quite clear. Or the information from the state police or the military board that they had here dealing with the issue that the fingerprints were not required. There's nothing whatsoever. The statute's quite clear. And as Justice Smith mentioned, it's reasonable to assume that retired police officers would be excellent candidates to be special investigators. But it is neither difficult nor burdensome for an appointee to be fingerprinted and their fingerprint is sent to the Illinois State Police. The statute, as I said, does not contain any waiver exception provisions. Clearly, if the legislature wanted to, as I mentioned, they would grant that waiver an exception. But you could be a police officer, you could be the sheriff and not have ever had police training and so never have submitted those fingerprints. I mean, the Cook County Sheriff has never been a police officer. So, I mean, I guess I understand what you're saying, but by basing your argument on the plain language is that it's required before. I mean, this is somebody whose fingerprints had been there before. They were there. They were transmitted to the Department of State. I mean, I just don't see this as the very best argument for affirming. Well, the other part has to do with addressing that court further. It has to do with the issue that whether or not the people in Springfield actually conducted a background investigation, how it was done, what they did, and more importantly, whether that information was ever transmitted back to the state's attorney. You have clearly, if you look at the date in the transcripts, that his appointment on, I think, January 21st, everything else followed after that. The information came back with the waiver granted after that, and that's not how it's supposed to be done. There's proper procedures in how to go about doing this. It appears that they jumped the gun and did not follow the steps in the statute, as I said. I think it's also important that when you look at the legislature's intent, the legislature employed the word shall numerous times within the subsections of the statute. The language of the statute is unequivocal, and it says, before a person is appointed as a special investigator, his fingerprints shall be taken. When addressing the issue, it has to do with strict or substantial compliance. There's two prongs to that. One is the court should look to see the purpose is determined was achieved without strict compliance, and the second is whether or not there was prejudice. Clearly, the legislature set forth exactly what they did. There's no information that it was actually given from the state police back to the state's attorney. When you take a look at the, I should mention that without having a background check and the fingerprints, it clearly defeats the purpose of this act. The second prong is whether or not prejudice to Mr. Harris, and we believe his prejudice from the state failure to comply with the term of the statute resulted in Gaither's invalid appointment. And simply put, Gaither did not properly possess police powers at the time he stopped and arrested Mr. Harris. The doctrine of fundamental fairness requires the state to follow the laws written, which they didn't do in this case. The reasons set forth in our brief, as well as this argument here today, we ask Mr. Harris' request that the court affirm the trial court's order granting his motion to suppress. Let me just ask you one. Okay, so the state police and the FBI, they got bazillions of fingerprints sitting in these computer files or whatever, and so they don't just run them randomly. It's when a new set is submitted and maybe a redundant set at that point, then they match them against whether there's anybody done something bad or they're looking for them. And do you know what the nature, is it very clear what the nature of the background check was done on this trooper? Because even though the prints are already on file, the purpose of submitting prints is to generate a new search against those prints. Exactly. That wouldn't have happened. So what's your position with respect to what Ms. Kelly said about, gee, a background check was done within days. Our position on that is we have no idea knowing that. They just came back and made a statement. They didn't tell you what they used, how they went about it, what the documents, what databases they went to and checked it out. Or, more importantly, whether that information that they did was even submitted to the state's attorney prior to him appointing the individual. Thank you, Your Honor. Mr. Goldfuss, did I get that right? Correct, Your Honor. May it please the Court, I report to Mr. Goldfuss of the Public Defender's Office on behalf of James Saxon to defend Eppley. I also note for record that Mr. Bertrand counseled for Stephen Pirro, and Matthew Flynn has allowed me his five minutes. I want to start with what, Justice Schmidt, you were discussing to begin the argument with Ms. Kelly. This Court has absolutely everything that it needs to address the alternative grounds to affirm. It was raised in the trial court, it was decided by the trial court. You have the testimony of Mr. Gaifer, you have the testimony of the state's attorney, you know what the case law says, you know what the statutes say, you have everything that you need to decide this issue. Really what the issue comes down to, factually, is whether a state's attorney can have his own private police force, as you stated. He most certainly cannot. There's no basis for it under Illinois law, and it's contrary to common sense. The dispositive legal inquiry for that issue is, when you have Mr. Gaifer and all the other members of the state's team patrolling highways for purposes of drug interdiction, are they conducting an investigation that assists the state's attorney in the performance of his duties? They are not. If there's one point that I could make for this Court to walk away from my argument, it would be this. Looking for something to investigate is not an investigation. And that's what's going on in this case. You have Mr. Gaifer and these safe members of the state's team that are watching motorists after an overdrive by in hopes of finding someone who they suspect is trafficking narcotics, based on characteristics of the drug trafficker, whatever those people give those to be. These are cases where it's known to the state's attorney that, for example, James Sachs is going to be driving down I-80 today and he's going to be trafficking narcotics. I follow all that, but what do you say about Ms. Kelly's argument that, gee, the statute says they've got all police powers. They can do everything any policeman can do. If this Court were to accept that argument, then any peace officer in the state of Illinois can patrol a highway and perform drug interdiction. That would include the county coroner, and I highly doubt that the legislator intended the coroner, instead of dealing with dead bodies, to go out and patrol a highway. I think if you look at legislative history, the plain language of the statute, and you also use common sense and take into account all the practical considerations, there's only one reasonable conclusion that you can reach, and that's that these special investigators have police powers and are peace officers only when they're performing their statutory functions, which are the three listed in the statute, serving subpoenas, making a return of process, and conducting investigations that assist the state's attorney in the performance of his duties. On the House floor, you had a debate where they came out and said, the sponsor of the bill for the statute came out and said that special investigators don't have police powers over and beyond their duties, and the example that was used was they can't go out and stop someone for speeding on the way to work. We know that a regular police officer can't do that. That's the Arrington case. So right off the bat, we know that their police powers are limited. The question then becomes, okay, what is it limited to? If you look to the plain language of the state's attorney statute, specifically subsection B, it says that special investigators can only carry firearms when they're performing their duties. Well, of course, under that statute, but in reality, retired policemen, as long as they're qualified, can carry guns anywhere they want, anytime they want. And that's only because this special investigator happened to be a retired policeman. But if it weren't a retired policeman who qualified under it, I mean there's other statutes that allow these guys to carry guns anywhere at any time, but assuming that you don't have a former trooper gator here, but somebody who's come out of the civilian life and never been one, then he can only do that, right? Correct, but I still think that that statement in the statute is significant because it says that these people aren't peace officers with police powers unless they're performing their statutory duties. It's the only time they're authorized to carry a weapon. Also, if you look at the statute, it says that they're peace officers with police powers subject to the qualifications of this subsection. That's limiting language. And if they can only be appointed to perform those three functions, it necessarily follows that they can only perform those three functions. Additionally, if you just think about the practical considerations, you'll have state attorneys appointing these special investigators not to perform the three statutory functions, but solely for their police powers. Well, in essence, you've got them performing the functions of the county sheriff. You know, they're sworn in as county, right? The sheriff would go out there on the interstate and get speeders and drug traffickers. So in essence, it appears that in fact what they're doing is performing the functions of the sheriff. Your Honor, our position is that they can only perform the functions of the sheriff when they're performing the three functions that are listed in the statute. In the course of investigating something that's insider. But not to go out and write speaking tickets. Not to go out and observe Your Honor outside the courthouse when you leave and say, oh, he didn't yield, I'm going to pull him over and give him a speaking ticket. Absolutely not. I mean, that's contrary to common sense. That's not what investigators do. And just because they're called special, it doesn't make them that special. They're not police officers. I guess returning to the first issue regarding the appointment, to get to what Justice O'Brien and you were talking about, I think we need to appreciate what is the purpose of sending these fingerprints. It's not just that the state police can have them on file. It's to trigger a background check. And the intent of the legislature for that was we don't want state attorneys to say, okay, I'm familiar with this person. There's no way he's been convicted of a felony or an offense involving moral turpitude. We don't want that to happen because it's not reliable. We want the state's attorney to go through the process, trigger the background check, prove the submission of fingerprints, have the state police run the background check, and then turn over any conviction information that's found. Then the state's attorney, looking at that conviction information, has to make a determination. Number one, has this person been convicted of a felony? Number two, is there a conviction for an offense involving moral turpitude? The legislature did not want the state police to make that determination, and it did not want a layperson such as Laura Baker to make that determination. Number one, the Training and Standards Board is separate from the state police. It's a separate entity. So right there you know it's not in compliance with the statute just to say, okay, we have a testimony of Laura Baker. She says there's no improper convictions. As a layperson, how does Laura Baker know what an offense of moral turpitude is? Does she know that it could be a misdemeanor? We have no idea because we don't have a factual basis for our knowledge in the affidavit. And we've submitted that affidavit isn't reliable. And because the state's attorney did not go through the process of getting a background check, because the affidavit of Laura Baker is not reliable, there's no way for this court to determine reliably that Mr. Gaifer didn't have a conviction for a felony or an offense involving moral turpitude. You just don't know based on this record. And it's absolutely the state's burden to prove that there wasn't. It's really not so much the fingerprint card itself. It's the running that background check that includes the use of fingerprints through the database and coming up with the information, supplying it to the state's attorney prior to the commencement of the appointment or employment. That's really the biggest problem, as you said. His fingerprints obviously don't change. Maybe technology and the way they take them has increased. But it's the fact that you don't know on the record whether or not these things were correctly run or when they were run. Did they include that? So that's really the biggest issue, not just the very technical, do they have to be a new set of fingerprints taken? It's the submission for that background check. Yeah, I would agree with that. I think the way the state's attorney looked at this was, okay, they have these fingerprints in their system. That's all that matters. I think the state's attorney did not appreciate what the statute really requires and what the legislature's intent was. We don't want the state's attorney to assume that because we have a decorated officer, he doesn't have any felonies or convictions for crimes of multiplicity. That's what happened in this case. I'd like to read a part of the state's attorney's testimony to this court. This is from the first supplemental report of proceedings at page 16. I think it's very telling as to what exactly happened in this case. The state's attorney was directly asked what he did to comply with the statute, and this was his answer. He said, well, and I quote, It was all, I knew this, I knew that, I was very familiar with them. And that's exactly what the legislature did not want to happen. Counsel has one minute. Let me ask you, would you agree with me that if I agreed, or if the court would agree with your argument that they're not, that this, what's going on is unauthorized, then they don't have to reach the fingerprint issue, right? You wouldn't have to, but I don't think it would hurt to address both. I mean, you know, you wouldn't have to, because it would make that first point. So unless the court has any further questions, I'm going to ask that you affirm. No, I guess not. All right, thank you. Thank you. Ms. Kelly, we're both. The language I was looking for earlier, that was in the reply brief, and it was quoted in People v. Norm. A prosecutor ordinarily relies on police and other investigative agencies for investigation of alleged criminal acts. But the prosecutor has an affirmative, this is italicized, affirmative responsibility to investigate suspected illegal activity when it is not adequately being dealt with by other agencies. That's the factual question that remains open. That may have been part of the state's attorney's reason for using the investigators in this matter. So he was investigating drug traffic through LaSalle County that wasn't being adequately handled? I don't know. We don't have a record on it, but that is the type of factual question. Was it raised below? In this case, no. In any of them? In any of these four cases, no. There had been other hearings with regard to this. There were two. There was one in which a defendant's motion to quash and suppress was denied, and the defendant never appealed it. And then there was another case just before this one where the defendant's motion to quash was granted on this limited fingerprint issue. That has been briefed. That was filed first and is supposed to be argued. Well, it could have been argued today, but I believe Mr. Comey was unavailable today and it will be argued in the future. That record did not develop it either. I believe it was the first record, the one that wasn't appealed, that would have developed it. In Mr. Comey's case, the people have then taken the position that only the fingerprint issue is before the court. The people continue to submit that the three duties allowed to these people, the first two are quite narrow, the service of subpoenas, et cetera, but the third function is very broad. And when the police powers of these officers come from the State's Transparent Prosecutor Act, where it specifically gives police powers to these peace officers, that does not extend to the coroner, that does not extend to any of the other examples that counsel gave in his brief. In fact, the police powers, the legislature narrowly addressed them with regard to as they appear in the State's Transparent Prosecutor Act. And the last thing I would point out is that in fact the defendants, each of the defendants stipulated to the testimony of Laura Baker, the woman from the Illinois Law Enforcement Training Standards Board. That background check did in fact occur prior to the swearing in by a couple of days. And they have stipulated to the evidence, they can't now say that it's not reliable evidence. As I said earlier, the legislature tasks many different law enforcement agencies with doing background checks. Several other statutes task the Illinois Law Enforcement Training Standards Board with the duty of performing background checks because it's stipulated to her evidence. I believe that the question of whether she was qualified to do this cannot now be raised by the defendant. With that, we would ask the court to overturn the trial judge's grant of the motion to quash and suppress and remand the case for further proceedings. Thank you. Thank you all for your arguments here this morning. As indicated previously, Justice Litton will be participating in the conference in this case. A written disposition will be issued. And right now the court will be in recess until 1.15. Thank you.